# Mizell v. The State.

## *Murder.*

(Decided June 30, 1913.   Rehearing denied December 18, 1913.
63 South. 1000.)

1. *Grand Jury; Drawing; Notice.*—Under section 15, Acts 1909, p. 310, the drawing of the juries for the next term by the judge of a court of record residing near it was valid, although the notification of the clerk was not in writing.

2. *Same; Organization; Motion to Quash.*—A motion to quash the venire of the grand jury was properly overruled under the provisions of section 29, Acts 1909, p. 317.

3. *Same; Plea in Abatement.*—Under section 23, Acts 1909, p. 315, a plea in abatement setting up that the grand jury was not drawn by the judge of the circuit court, or in his presence, but not showing that they were not drawn by a certain officer authorized by law, was demurrable.

4. *Solicitors; Absence; Appointment; Special Officer.*—Under section 7787, Code 1907, where the regular solicitor was absent, the presiding judge was authorized to appoint a special solicitor, whether the regular solicitor was properly absent or not.

5. *Homicide; Evidence; Reputation of Deceased.*—Where the issue was as to the reputation of deceased as to peace and quiet, evidence that persons had said that they would swear that they would not believe him, was immaterial.

6. *Same; Self-Defense; Bona Fides.*—While a defendant may act on appearances he must entertain the bona fide belief that he is in actual and not apparent peril as indicating actual peril.

7. *Same; Mental Incapacity; Defense.*—One afflicted with a mental disease which deprives him of the power to choose between right and wrong cannot be convicted of a homicide impelled by such disease, although he may know right from wrong.

8. *Witnesses; Responsiveness of Answer; Experience.*—When a witness is asked as to the general reputation of deceased for peace and quiet, he cannot relate his personal experiences with deceased.

9. *Same.*—A statement by the witness that deceased had waylaid witness was not responsive to a question as to whether witness had ever heard anyone say that deceased had the reputation of being a man who would slip up behind one and take advantage of him; hence, such answer was properly excluded.

10. *Same.*—An answer to the question as to whether defendant had made any threats against deceased, that under certain circumstances he did, was responsive, although tending to show that the threats were qualified or conditional.

11. *Appeal and Error; Harmless Error; Evidence.*—If there was error in admitting testimony tending to contradict a witness, such error was cured by subsequently excluding such evidence.

12. *Same.*—Where a witness for the state had been allowed to testify that defendant had made what he regarded as a threat under certain circumstances, defendant was entitled under cross-examination to have such witness testify just what defendant had said about deceased, and a refusal to permit it was prejudicial error.

13. *Charge of Court; Abstract.*—Charges asserting that if the jury was satisfied by a preponderance of the evidence that at the time of the killing, defendant was afflicted with a mental disease by reason of which he had lost the power to choose between right and wrong and to resist the killing which was the result solely of such mental disease, he was not guilty, was not objectionable as being abstract.

14. *Same; Insanity.*—The refusal of such a charge cannot be justified as bad in form as it did not attempt to direct any particular form of verdict, but simply required an acquital on the facts hypothesized; nor did it relieve defendant of the burden of proving insanity.

15. *Same; Argumentative.*—Argumentative instructions may be properly refused.

16. *Same; Covered by Those Given.*—It is proper to refuse instructions substantially covered by written instructions given.

APPEAL from Geneva Circuit Court.

Heard before Hon. H. A. PEARCE.

Frank J. Mizell was convicted of murder in the second degree and sentenced to the penitentiary for 25 years, and he appeals. Reversed and remanded.

The defendant pleaded in abatement in pleas 1 and 2 the facts set forth in the opinion. The third plea was that the grand jury was illegally drawn in that the presiding judge of the circuit did not draw the jury, and the record does not disclose by whom said jury was drawn or when drawn, and does not disclose any authority for the summoning of said jury. The fifth plea sets up that Hon. R. H. Parks was the solicitor of the circuit; was not connected with defendant in any way; that there was no vacancy in the office of solicitor; and that the court was without authority to appoint Hon. Albert E. Pace as special solicitor, but that he was appointed said solicitor and served with the grand jury finding the indictment. The motion to quash the venire was based: (1) On the fact that they were drawn by the judge in the clerk's office, and not in the courtroom or room where the court was held; (2) because during the first week, when the jury was drawn for the second week, certain named jurors then drawn were excused by the court from further attendance, and that the judge had time and opportunity before drawing the special venire to restore the names of said persons to the jury box, but did not do so, and that they were not in the jury box at the time the special venire was drawn, and other matters not necessary to be set out.

The solicitor asked the witness Faulk: "Did you ever hear any one say that deceased had the reputation of being a man who would slip up behind a man and take advantage of him?" The witness answered: "Well, I did not have to hear any one say anything about it. He way-

laid me at one time, and I know it from personal experience." On motion of the solicitor, the court excluded the answer of the witness.

The following charges were refused to defendant:

"(11)   If there is a probability from all the evidence in the case that defendant was free from fault in bringing on the difficulty and was in actual or apparent danger to his life or limb, or defendant was impressed with the reasonable belief that he was in actual or apparent danger to his life or limb, and was also impressed with the reasonable belief that there was no mode of escape open to him without increasing the danger to his life or limb when he killed deceased, they should find defendant not guilty."

"(22)   If the jury believe from the evidence that deceased made the first hostile demonstration by attempting, or apparently attempting, to draw a weapon from his hip pocket, and defendant honestly believed, or was reasonably impressed, that deceased was attempting to draw a pistol for the purpose of firing upon him, and was also reasonably impressed that he was in actual or apparent present danger to his life or limb, and there was no mode of escape open to him without increasing his danger, he would be justifiable in firing upon deceased, although it turned out that deceased was unarmed, provided defendant was free from fault in bringing on the difficulty."

"(1)   If, by a preponderance of the evidence, the jury are satisfied that, at the time of the fatal encounter, defendant was afflicted with a mental disease, and that by reason of the duress of such mental disease he had so far lost the power to choose between right and wrong (although he may have known right from wrong as applied to the killing), and the alleged killing was so connected with such mental disease in the relation of cause

and effect as to have been the product of it solely, the jury should acquit the defendant.

"(2)   If the jury believe from the evidence that defendant, at the time he fired the fatal shot, was acting under duress of a mental disease which destroyed his free agency, so that his power to resist killing Ed Stamps was at the time lost, and the killing was the offspring of such mental disease solely, they should acquit the defendant."

Charges 3, 4, 5, and 6 were relevant to a dormant disease of the mental faculty which appeared only under grief, fear, excitement, and its development resulted in the killing, having been brought about by statements of deceased.

ESPY & FARMER, W. O. MULKEY, C. D. CARMICHAEL, and W. L. PARKS for appellant. The judge and clerk failed to comply with section 15, Acts 1909, p. 310 in drawing the juries, and hence, motion to quash should have been granted.—Acts 1909, p. 310; *Jackson v. State,* 102 Ala. 76; *Scott v. State,* 141 Ala. 40. In any event, the clerk failed to notify the judge in writing as is required by the statute.—29 Cyc. 1117; 1 N. Y. App. 586; 14 Wend. 539; 3 Johns 107; Acts 1919, p. 310. The jury law requires the judge to return these names to the jury box, and a failure to do so is grounds to quash.—*Steele v. State,* 111 Ala. 32; *Wilkins v. State,* 112 Ala. 55; *Johnson v. State, supra; Wells v. State,* 94 Ala. 1; *Goodwin v. State,* 102 Ala. 87. The order was not sufficient. —*Harris v. State,* 55 South. 609; *Johnson v. State,* 57 South. 593; s. c. 59 South. 708; *Costello v. State,* 58 South. 202. The plea in abatement should have been sustained.—*Andrews' case,* 56 South. 998; *Jackson's case,* 55 South. 118; *Bailey's case,* 55 South. 601. The plea in abatement setting up the indictment was improp-

erly found because of the unauthorized appointment of the Solicitor should have been sustained.—Secs. 7781-2, Code 1907; 48 Ark. 227; 27 R. I. 42. The witness made up his estimate as to the character of deceased from the general talk, and he should have been permitted to testify where he got his information.—*McQueen v. State,* 108 Ala. 54; *Jackson v. State,* 106 Ala. 12; *DeArman v. State,* 71 Ala. 353. The unfavorable fact that defendant had made a conditional threat against deceased having been admitted, defendant was entitled to show and explain just what was said.—*McAdory v. State,* 62 Ala. 154; 12 Cyc. 420. The court erred in ruling out the statement of the witness that deceased had attempted to take advantage of him by slipping up on him.—*Jackson v. State,* 77 Ala. 24; *Cleveland v. State,* 86 Ala. 1. The evidence as to the condition of defendant was admissible, as the plea of not guilty by reason of insanity was in.—*Boswell v. State,* 63 Ala. 314; *Gunter v. State,* 83 Ala. 109. Counsel discuss other assignments of error, but without further citation of authority, as to evidence. Charge 11 should have been given.—*McBride v. State,* 156 Ala. 44; *Caldwell v. State,* 160 Ala. 96. Charges 1, 2, 3, 4, 5, 6 and 8 all relate to the same matter, and were certainly improperly refused.—*Parsons v. State,* 81 Ala. 571; *Lide v. State,* 133 Ala. 64; *Porter v. State,* 140 Ala. 88; *Raifield v. State,* 167 Ala. 94; *Odom v. State,* 172 Ala. 383; *Gilbert v. State,* 172 Ala. 386.

R. C. BRICKELL, Attorney General, HAMILTON & CRUMPTON, and D. M. POWELL, for appellee. There is no merit in the motion to quash the venire as it is not based on any fraud or failure of the proper officers to draw the jury.—Sec. 32, Acts 1909, p. 310. It was the duty of the court to appoint a competent prosecuting attorney in the absence of the regular Solicitor, whether

he was properly absent or not.—Sec. 7787, Code 1907. The motion to quash and the pleas in abatement were properly disposed of.—*Costello v. State,* 58 South. 202; *Johnson v. State,* 59 South. 708. The appellant cannot complain of the action of the court in excusing certain jurors.—*Andrews v. State,* 157 Ala. 23, and cases cited. Counsel discuss the assignments of error relative to evidence with the insistence that no error intervened, and they cite 1 Mayf. 336; 3 Mayf. 468. The truth or falsity of any statement made by deceased was not material to any issue in the case.—*Ragland v. State,* 125 Ala. 12. Charges 1 to 8 inclusive are properly refused.—*Maxwell v. State,* 89 Ala. 165; Sec. 7177, Code 1907. Charges 11 and 21 are subject to the same vice in that they ignore the duty to retreat.—*McCain v. State,* 160 Ala. 37, and cases cited.

ANDERSON, J.—Section 15 of the present jury law (Acts 1909 [Sp. Sess.] p. 310), among other things, provides that if for any reason "the judge of the court fails to draw the juries as required in this section before the twenty days above mentioned the clerk of such court shall notify the judge of any court of record, except probate judges, residing nearest to the place of holding the court, and it shall be his duty upon receiving such notification to immediately draw the juries for the next term of the court in the manner herein provided." The defendant's pleas 1 and 2 question the action of Judge Campbell in drawing the jury because it does not appear that the clerk notified him in writing that the judge of the circuit court had failed to draw the juries. The statute does not require that the judge of the court of record be notified in writing of the default of the judge of the trial court, and we think that the demurrers to said pleas 1 and 2 were properly sustained.

The third plea was also without merit, and the demurrer thereto was properly sustained. While it charged that the juries were not drawn by the judge of the circuit court or in his presence, it does not charge that they were not drawn by Judge Campbell or some other officer authorized by law, and section 23 of the jury law (Acts 1909 [Sp. Sess.]) provides: "That no objection to an indictment on any ground going to the formation of the grand jury which found the same can be taken to the indictment, except by plea in abatement to the indictment; and no objection can be taken to an indictment by plea in abatement except upon the ground that the grand jurors who found the indictment were not drawn by the officer designated by law to draw the same."

Section 7787 of the Code of 1907 authorizes the presiding judge, when the solicitor is absent, or for other reasons there enumerated, to appoint a competent attorney to act in his place. If the regular solicitor was absent, regardless of the reason or cause, the presiding judge had the authority to appoint the special solicitor, and whether the regular solicitor was properly absent or not. In justice, however, to the regular solicitor, we may add that it was as much his duty to be at the special term being then held in his circuit as the term in question. The defendant's plea 5 in abatement was subject to the state's demurrer.

The motion to quash the venire was properly overruled. Section 29 of the jury law, among other things says: "And no objection can be taken to any venire of jurors except for fraud in drawing or summoning the jurors." See, also, last part of section 32.

The personal experience of the witness, Faulk, with the deceased should not have been given by him when asked about the general character of the deceased for

peace and quiet. Moreover, his answer that the deceased waylaid him was not responsive to the question asked him on cross-examination. Nor was the veracity of the deceased at stake, and it was immaterial to the issues involved as to whether or not Faulk had heard people say, of the other faction, that they would go down on the stand and swear that they would not believe him. The trial court did not err in excluding this gratuitous statement of the witness Faulk. The deceased may have had a bad character for truth and veracity, and yet may have been a very quiet and peaceable person. The trial court did not err in excluding that part of Tom Brooks' reply to the state's question, as it was not responsive to said question.

The predicate attempted for the contradiction of the witness Dr. Eiland was denied by him, and, while the trial court subsequently permitted Johnson to testify to statements made by said Dr. Eiland, this evidence was subsequently excluded, and if there was error in admitting the evidence of Johnson, it was cured by the exclusion of same.

The witness Dr. Eiland was asked by counsel for the state: "Q. I did not ask you for that. I ask you if he (meaning the defendant) made any threats against Stamps. Did he? A. Under certain circumstances he did. Q. Under certain circumstances he did? A. Yes." While this reply of the witness tended to qualify the threat or show that it was conditional, it was responsive to the question asked and was sufficient to impress upon the minds of the jury that the defendant had threatened the deceased, and may have had great weight with the jury, and the defendant was entitled, upon cross-examination, to have the witness state just what the defendant said to Dr. Eiland about the deceased in order that it could be ascertained whether or not it was a threat,

and, if one, the circumstances under which it was made. The witness was permitted to state that the defendant made what he regarded as a threat under certain circumstances, and yet the defendant was deprived of having the jury informed as to what he said and the circumstances under which he said it. This was not only error but was calculated to be highly prejudicial to this defendant.

The other exceptions as to the ruling upon the evidence are not only without merit, but a discussion of same can serve no good purpose.

Charges 11 and 22, refused the defendant, if not otherwise faulty, predicate self-defense upon a reasonable belief on the part of the defendant that he was in actual or apparent peril. While a defendant may act on appearances, he must in the meantime entertain the bona fide belief that he is in actual and not apparent peril. In other words, the appearances of danger, whether real or apparent, must be bona fide believed by him as indicating actual peril.

Charges 1 and 2, refused the defendant, should have been given. They assert correct legal propositions and were not abstract. Nor did they relieve the defendant of the burden of proving insanity. *Parsons v. State,* 81 Ala. 577, 2 South. 854, 60 Am. Rep. 193. Nor can their refusal be justified because bad in form, for, if they were true, the defendant was entitled to an acquittal, regardless of the form of the verdict.—*Gilbert v. State,* 172 Ala. 386, 56 South. 136. These charges did not attempt to direct any particular form of verdict but simply required an acquittal upon belief of the facts hypothesized, and it was for the trial court to instruct the jury as to the form of verdict.

Charges 3, 4, 5 and 6, if not otherwise faulty, can be condemned as being argumentative.

The other charges refused the defendant were either faulty or were covered by given charges.

The judgment of the circuit court is reversed, and the cause is remanded.

Reversed and remanded.

DOWDELL, C. J., and MAYFIELD and DE GRAFFENRIED, JJ., concur.