## ADAN EVERETT V STATE.

No. 24235. February 2, 1949.
Rehearing Denied March 23, 1949.

*Alaniz & Norris,* Alice, and *Louis Scott Wilkerson* and *Sneed & Vine,* Austin, for appellant.

*Ernest S. Goens,* State's Attorney, Austin, for the state.

BEAUCHAMP, Judge.

Appellant was assessed a penalty of ninety-nine years in the penitentiary for murder.

Appellant and Willie (or Guillermo) Everett were indicted for the murder of Rodolfo Munoz. Willie Everett was first tried and the case is now pending before this court on a motion for rehearing. The facts of the two cases are practically the same, and show that the gun shot wound which killed Munoz was inflicted by this appellant. Willie was tried as a principal. His punishment was assessed at confinement in the penitentiary for a period of twenty years. It will not be necessary to restate the evidence in the instant case, but reference is made to the companion case above referred to, (Page 79 of this volume), and it is here observed that the evidence is sufficient to sustain the verdict of the jury.

The record before us contains seven bills of exception. Bills Numbers 1, 2, and 6 are based on the failure of the court to transfer the case to another county for trial. At the proper time a motion for change of venue was filed. Later in the proceeding this was renewed, as disclosed by Bill of Exception No. 2. After the jury had been selected, a motion was again filed and reliance is had on all of the testimony of the veniremen summoned for the selection of a jury, as given by them on their voir dire examination. In each instance the state contested the motion.

The first bill discloses that appellant called six witnesses who gave it as their opinion that there was such prejudice against appellant in Duval County that he could not secure a fair and impartial trial. The contest by the state was supported by fourteen witnesses, who had the opposite view. A question of fact was presented to the court and we do not think that he abused his discretion in refusing the motion.

Bill of Exception No. 2 shows that additional witnesses were called in support of the motion for change of venue and the testimony was controverted by three, in behalf of the state, who took a different view. We think the court was within his rights when he found against the motion.

After the jury had been impaneled, and before any evidence was presented, appellant insisted on another application and introduced in support thereof all of the examination of the venire-

men, as above stated, which covered approximately 450 pages of the transcript. It is not practical to review the statements of the entire 180 jurymen whose evidence is relied upon. Practically all, if not all of them, had heard about the case. They knew about the trial of Willie Everett and the penalty assessed against him. The papers had published the news of some character, but there is nothing in the record to show what that publication was. A great many of the jurors did express an opinion regarding the matter, but we observe that the trial court exercised great care and caution in ruling on the qualification of the jurors, and many were excused who were not, as a matter of law, disqualified. Because of this ruling we find the large number of jurors examined. The special venire was exhausted and a second list of talesmen were brought in before the jury was secured. We are unable to say, from a consideration of the entire proceeding, that the court abused the discretion lodged in him under the law in overruling the motion for change of venue. Bills of Exception Numbers 1, 2, and 6 do not show error. Art. 562, Vernon's Ann. C. C. P., cases under note 12.

Bills of Exception Numbers 3, 4, and 5 complain of the failure of the court to sustain the appellant's challenge for cause of certain prospective jurors. In Bill No. 3 the juror had two relatives who served in the Willie Everett case. He knew the results of that trial. He was also called as a juror in the other case, but was not examined for service. He knew where the killing took place and the name of the man supposed to have been killed. He did not know the parties nor their families. He said that he, "had some idea about it." What that idea amounted to was not developed, but he said he had not heard enough about the facts to form an opinion as to the guilt or innocence of the parties on trial. What he had heard was hearsay, he had never talked to any witness and had no opinion as to the guilt or innocence of the accused. He said that he would be governed by the law in arriving at a verdict.

Bill Number 4 deals with the juryman M. L. F. Erickson. He had formed no opinion as to the guilt or innocence of the accused which would or might influence his verdict. He did not know the defendant and knew nothing about the case. He said he had heard of the verdict in the other case and that "it might take some evidence to remove such fact from his mind," but he stated that he would not consider such fact as he did have in mind as evidence against the man on trial. His examination by the court and by the prosecution clearly qualified him as a juror.

Bill Number 5 complains of the refusal of the court to excuse the juror Belk upon appellant's objection. Under examination by the defendant's counsel, he said he had "some general idea as to what happened." This was taken from talk that he had heard, but that such matters would not be considered by him as a juror, and it would not take evidence to remove anything from his mind that he had heard. He did say that it might take some evidence to remove some things from his mind, but the record does not reveal what that was. He declared he had no opinion as to the guilt or innocence of the accused. At the time this juror was presented appellant had exhausted his peremptory challenges and the juror was accepted by the state. No error is shown by this bill.

The most difficult question which we have encountered in this case is brought forward by Bill of Exception No. 7. Ernesto Everett, Jr., was a witness in behalf of appellant. He was not present at the time of the alleged murder, but was laid up in bed from wounds which he received in a difficulty which originated at the saloon of the Everetts, a short time prior thereto. It is in evidence without dispute that the killing for which appellant was on trial had grown out of and was the aftermath of the difficulty between the Everett family and the Munoz family at the Everett saloon. Charges had been filed against the Munoz boys and they were permitted to take bonds and go out to get signers. It is the theory of the state that this fact incensed the Everett brothers and brought about the killing. It is proper to show what had given rise to this killing. The state's first witness gave his account of the clash between the two families. Ernesto was called as a witness by appellant and gave his account of the things which took place, and which resulted in his being confined to his bed for about seventeen days. On cross-examination the state brought out the fact that Ernesto was charged by indictment with assault to murder. No details were given and the name of the prosecuting witness was not called for. Bill of Exception No. 7 shows that in his argument to the jury the district attorney attacked the testimony of Ernesto and said: "Take the witness, Ernesto Everett, Jr., he is at the present time indicted for assault to murder on an officer." The evidence did not show that the assault was made on an officer and the district attorney's argument was improper. Objection was timely made to it, with the request that the jury be instructed not to consider it. The court should have sustained the objection and given the requested charge to the jury.

The argument is presented by appellant that this statement was a reflection on appellant and his kinsman associated in the

difficulties between the families. We are unable to construe it as being a reflection on appellant. Probably some juror would consider a charge for assault to murder an officer as more serious than one for assault on some other person. We are unable, however, to support the conclusion that this would or should reflect on anyone other than the witness himself. In this view it becomes important to consider the evidence which the witness was giving in the case. The court permitted the defendant to detail, through this witness, the transactions of the difficulty at the Everett saloon. It was important to the defense to show that such a difficulty took place, but the details of the difficulty should be viewed as of minor importance. It is true that they varied considerably from those given by the state's witness. We think the details which he gave are also of minor importance. The crux of the defense was that they had such difficulty, that it resulted in some fights, that feeling ran high between the parties, and that this caused him to shoot in defense of his brother. The state used the same previous difficulty to show malice. This is disclosed by all of the testimony, regardless of what the jury thought about the witness Ernesto. If the argument brought into the case a new fact reflecting on that witness, the jury could disregard his testimony altogether and still have before them, without dispute, the important fact that a difficulty of the nature described took place. We cannot feel that the error is sufficient to work a reversal.

Reliance is had by appellant on the case of Finley v. State, 169 S. W. (2d) 975. The question there under consideration was a close one and turned upon the fact that the argument presented prejudicial matters to the jury, which, because of the condition of the times, might have more than ordinary appeal. It was without question inflammatory, while in the instant case it is doubted that the evidence given by the witness had very great probative force and the reflection on him, if any, was quite speculative and not certain as in the Finley case.

Finding no reversible error, the judgment of the trial court is affirmed.

#### ON MOTION FOR REHEARING.

GRAVES, Judge.

Appellant's main contention herein is based upon a statement of the state's attorney in an argument to the jury wherein he was commenting on the testimony of one of appellant's brothers, Ernesto Everett, Jr., and used the following language:

"Take the witness, Ernesto Everett, Jr., he is at the present time indicted for assault to murder *on an officer.*" The portion hereof objected to is underscored by us. The remaining portion of such argument is supported by the evidence of Ernesto himself from whose testimony we quote:

"I am not under indictment for assault with intent to murder. You say that this last Grand Jury indicted me for assault with intent to murder, and I say that they did not give me any chance to testify. I am under bond; I would have to be under bond, otherwise I would be in jail. I am under indictment for assault with intent to murder; I guess I am, but I do not know why though."

This witness was not present at the scene of this shooting, but merely testified to two certain difficulties he had participated in previous to the time charged in this present indictment, such previous encounters being only remotely connected with the killing for which appellant was herein convicted.

This phrase "on an officer" was not in the record, and we are in accord with the original opinion wherein such was called an error. We are cited to certain decisions claimed to hold that an error was fatal to the conviction. Let us analyze these citations.

In Deuran v. State, 130 Tex. Cr. R. 308, 94 S. W. (2d) 181, there was held to be error in the statement of the district attorney that "C. J. Jones was employed in a drug store and was not a pharmacist and you know what he was selling." It was contended that such a statement contained an intimation that Jones was selling whisky and same was not a legitimate deduction from the testimony relative to this witness who had given material testimony in behalf of appellant. Not so in Ernesto's testimony; he was not even present at the homicide, but was in bed suffering from injuries received in the two previous encounters at which appellant was not shown to have been present.

In the case of Harrison v. State, 102 Tex. Cr. R. 385, 278 S. W. 430, the prosecuting attorney gave testimony out of the record relative to the accused's failure to bring his wife to testify, saying: "He would have had his good wife here to deny such things, but he knew that I had talked with her and that if she was put on the witness stand she would have told the truth about it and it would have convicted him." The matter

being inquired about therein was the possession of intoxicating liquor for the purpose of sale, and of course, such a statement contravened the law in more than one aspect. It evidenced the fact that the attorney had talked with the wife and that she had told him a story in conflict with the accused's testimony.

Again, we are cited to the case of Williams v. State, 96 Tex. Cr. R. 294, 257 S. W. 544, as in point herein. That was a liquor case, and the state had used as a witness, Mr. Brite, who allegedly had purchased liquor from the accused. The accused showed that Brite was under indictment for murder, as he had a right to do, and the state was then allowed, over objection, to show that the person alleged to have been killed was a bootlegger. In his argument to the jury the assistant district attorney stated in substance that Brite was an officer and was under indictment for killing a bootlegger while he was undertaking to make an arrest for the illegal selling of liquor; that Brite was doing his duty as an officer and trying to enforce the prohibition law; that it was his duty to arrest bootleggers, and if the real facts were known, they would not censure Brite. To this testimony and this argument an exception was taken and for that, as well as other errors shown, that case was reversed. It is apparent that the objectionable statement of the state's attorney went far beyond the record and gave supposed incidents relative to the killing of this supposed bootlegger which, together with other errors, resulted in a reversal.

We are cited to the case of Wright v. State, 112 Tex. Cr. R. 214, 16 S. W. (2d) 126, in which the charge was rape under the age of consent. The accused offered a witness who testified to having seen the prosecutrix in an act of intercourse with a person other than the accused. The prosecuting attorney then asked this witness if he did not rob a filling station and, upon an objection being made thereto, the attorney stated: "I want to show that he is not only a liar but also a thief. He helped steal money from the bank; that he has been charged and had been arrested for breaking into a filling station." It appears that no testimony was available and none presented showing any such indictment, and in view of the closeness of the question of guilt, this court held such a statement of the prosecuting attorney to be error.

In the case of Finley v. State, 145 Tex. Cr. R. 507, 169 S. W. 975, we had the following to say:

"We think the safe rule relative to complained of argument to be as laid down in Vineyard v. State, 96 Tex. Cr. R. 401, 257

S. W. 548, 550: 'We think the only safe rule to be that this court should not hold an argument to be reversible error unless it is in extreme cases where the language complained of is manifestly improper, harmful, and prejudicial, or where a mandatory provision of the statute is violated, or some new and harmful fact injected into the case. Stanchel v. State, 89 Tex. Cr. R. 358, 231 S. W. 120; Henderson v. State, 76 Tex. Cr. R. 66, 172 S. W. 793; Bowlin v. State, 93 Tex. Cr. R. 452, 248 S. W. 396.' Threadgill v. State, 124 Tex. Cr. R. 287, 61 S. W. 2d. 821."

We express the opinion that the added phrase complained of by the bill of exception in the present instance was not of sufficient harmfulness to warrant a reversal hereof. The witness, Ernesto Everett, Jr., was not present at the homicide and gave no testimony relative thereto. He merely testified relative to two previous difficulties in which he and his brothers and father had some trouble with the Munoz boys and their father (the deceased), in neither of which difficulties was appellant himself present, and Ernesto merely gave his version of these difficulties had at a date prior to this homicide. Applying the rule set forth in the Vineyard case, supra, we see no serious error shown in this bill.

It is also worthy of note that appellant's defense was based on the fact that he was defending another brother by the name of Willie, and no mention is made of Ernesto, Jr., in such claimed defense of Willie, which resulted in the killing of Rodolfo Munoz.

The details of these two previous difficulties may become material in other and different trials, but they are useful herein only in showing the basic cause of this armed attack upon the man who lost his life on the occasion herein complained of, and we find but little, if any, difference in the proof relative to there having been two such encounters between these two families, never finding appellant present at such previous encounters.

We adhere to the views expressed in our original opinion herein, and the motion will, therefore, be overruled.