STATE, Respondent v. CONNOR, Appellant

(199 N.W.2d 695)

(File No. 10962. Opinion filed July 26, 1972)

Sidney B. Strange, Sioux Falls, for defendant and appellant.

Gordon Mydland, Atty. Gen., William J. Srstka, Jr., Asst. Atty. Gen., Pierre, for plaintiff and respondent.

WOLLMAN, Judge.

Defendant was convicted of grand larceny by a circuit court jury in Minnehaha County, South Dakota. He was originally charged conjointly with William (Bill) Rober, but was granted a separate trial pursuant to motion. Rober was convicted by a circuit court jury of grand larceny on February 17, 1971. His conviction was recently affirmed by this court, State v. Rober, 86 S.D. 442, 197 N.W.2d 707. Defendant's trial took place on February 23 and 24, 1971. Present counsel was appointed to represent him on appeal.

On September 18, 1970, an appliance dealer purchased two new 23-inch color TV sets from Warren Supply Company in Sioux

Falls, South Dakota. The boxes containing the TV sets were placed in the box of the dealer's pickup truck. The dealer parked the pickup truck in the parking lot behind a Sioux Falls bar at approximately 7 or 8 o'clock that evening. Upon returning to his truck some two hours later, the dealer discovered that the boxes containing the TV sets were gone.

Some time between 10 and 11 p.m. on September 18, 1970, defendant called a Mrs. Lane Kuper in Sioux Falls and told her that he had "a real good deal on a television set." Mrs. Kuper and her husband were slightly acquainted with defendant, having met him earlier in the year when he was working in the neighborhood. Sometime prior to September 18, 1970 defendant and Mr. Kuper had had a conversation to the effect that defendant was to obtain a TV set for the Kupers.

Shortly after the telephone conversation, defendant and Rober delivered the TV set to the Kuper residence. Mrs. Kuper paid defendant $75 for the TV and also agreed to trade him a used black and white TV set.*

Upon learning the next day that two TV sets had been stolen from a pickup truck, Mr. and Mrs. Kuper contacted the Sioux Falls police department. It was subsequently determined that the TV set that defendant had sold to Mrs. Kuper was one of those that had been stolen.

Defendant took the stand in his own behalf and testified that as he left his hotel at approximately 10:30 p.m. on September 18, 1970 on an errand for another guest at the hotel, he met a man on the street who offered to sell him a TV set for $100. After some haggling, defendant bought the TV set for $60. Defendant then called Rober who arrived five or ten minutes later and helped defendant load the TV in Rober's car and deliver it to the Kuper residence.

---

* The dealer testified that he had paid $400 for the TV set and that its retail market value was between $500 and $600.

Defendant was unable to name or specifically identify the person from whom he said he had purchased the TV set, although he testified that he had purchased a shotgun and a TV set from this individual approximately a year earlier. The Sioux Falls police department was unable to locate anyone answering the general description given by defendant or driving the pickup truck described by the defendant.

Defendant assigns as error the trial court's failure to grant his motion for a continuance over the term. Defendant argues that he could not receive a fair trial because the jury which convicted him was selected from the same panel from which the jury was drawn which a few days earlier had convicted defendant's co-defendant. Defendant invites us to take judicial notice of the fact that the entire panel is present in the courtroom during voir dire examination. He argues that it would be illogical to suppose that his name went unmentioned during the voir dire examination in Rober's trial; consequently, the panel from which defendant's jury was selected must have been made aware of his alleged connection with the crime at the time Rober's jury was selected.

The jurors who sat in Rober's case were all excused from the courtroom and were not present at the time of the selection of the jury in defendant's case. Moreover, the first 12 jurors who were called from the panel in defendant's case were duly impaneled to try the case after voir dire examination; none of them were excused for either challenge for cause or peremptory challenge, notwithstanding the fact that at the time defendant's motion for continuance was denied the court stated that the defendant would be allowed great leeway in any challenge for cause which he might wish to make against any of the prospective jurors.

Contentions similar to that raised by defendant have been considered and rejected by other courts. See Everett v. State, 153 Tex.Cr. 180, 218 S.W.2d 471; Warden v. State of Tennessee, 214 Tenn. 398, 381 S.W.2d 247; Jarrard v. State, 87 Okl.Cr. 89, 194 P.2d 227; People v. Betts, 94 Mich. 642, 54 N.W. 487.

Defendant has not demonstrated that he was denied a fair and impartial jury. Indeed, it is difficult to see how he

could do so in view of the fact that all of the jurors who sat on his case were apparently satisfactory to him, inasmuch as he did not exercise any of his peremptory challenges. Assuming that defendant is correct in his assertion that at least some of the members on his jury must have heard about his involvement by reason of being present during the voir dire of Rober's jury, it does not follow that defendant did not receive a fair trial. He was entitled only to a fair and impartial jury, not a jury composed of individuals who had absolutely no prior knowledge of the facts of his case. State v. Flack, 77 S.D. 176, 89 N.W.2d 30; State v. Belt, 79 S.D. 324, 111 N.W.2d 588; State v. Goodale, 86 S.D. 458, 198 N.W. 2d 44.

■ Defendant contends that the state's evidence, being circumstantial in nature, is insuffficient to sustain the verdict. Our holding in State v. Rober, supra, disposes of this contention inasmuch as the evidence linking defendant with the theft of the TV set is stronger than that which implicated Rober.

■ Defendant argues that he was denied due process of law and equal protection of law because he received a penitentiary sentence of five years, whereas Rober was sentenced by the same trial judge to a term of two years for the same offense. Defendant contends that the record indicates no distinguishable differences in demeanor, past records or backgrounds to justify the disparity in sentences. We believe that our decision in State v. Goodale, supra, answers defendant's contention. The trial judge was in a position to consider many factors in imposing sentence on defendant and on Rober and could very well have determined, among other things, that defendant's participation in the crime was greater than was Rober's. We conclude that defendant was not denied due process of law or the equal protection of law with respect to his sentence.

The conviction is affirmed.

All the Judges concur.